1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WALTER JOHNSON,

11          Petitioner,                    No. CIV S-05-1223 JAM DAD P

12      vs.

13   M.L. EVANS,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2002 Sacramento County

18   Superior Court conviction following a  jury trial for premeditated attempted murder (Cal. Penal

19   Code §§ 664/187),[1] home burglary (Cal. Penal Code § 459) and assault with a deadly weapon, a

20   police night stick, with the force likely to produce great bodily injury (Cal. Penal Code § 245

21   (a)(1)).  The jury also found the enhancement allegations that petitioner was personally armed

22   with a deadly weapon during the commission of the crime (Cal. Penal Code § 12022(b)(1)) and

23   personally inflicted great bodily injury under the circumstances of domestic violence (Cal. Penal

24   Code § 12022.7(e)) to be true.  As a result, petitioner was sentenced to life in prison with the

25   _____

26          [1] Petitioner was acquitted at trial of premeditated attempted murder of a second victim.

1

possibility of parole and 15 years in state prison.  (Answer at 1-2.)  In his petition pending before this court petitioner collaterally attacks his conviction, raising the following grounds for relief: 1) ineffective assistance of trial counsel for failing to seek suppression of evidence and for failing to prevent the destruction of evidence;[2] 2) jury instruction error; 3) the trial court erred by forcing petitioner to testify before other defense witnesses and 4) insufficient evidence to support attempted murder.  (Petition (Pet.), filed on June 20, 2006, at 6.)[3]

After carefully considering the record, the court recommends that the petition be denied.

PROCEDURAL AND FACTUAL BACKGROUND[4]

***Prosecution Case***

[Petitioner] and Robyn R. (Robyn) were married for four years and lived in Robyn's house in Sacramento.  [Petitioner] often yelled at her and held her by the throat.  In 1997, [petitioner] had been convicted of a federal offense; after serving his term, he violated his parole several times.  During his most recent incarceration in a federal detention facility in October 2000, Robyn decided to leave him.

[Petitioner] called Robyn from prison in January 2001.  Robyn told [petitioner] she was ending the relationship; she was sending his clothes to his aunt and changing the locks on her doors, as well as her telephone number.  [Petitioner] threatened to stalk her, and hurt or kill her.  After the telephone call, Robyn attempted to get a restraining order against [petitioner].  On February 5, Robyn wrote to [petitioner] restating her intentions to leave him and change her

---

[2]  These claims were presented separately by petitioner but the court will discuss them together.

[3]  The court has referred to all page numbers as they appear on the court's electronic filing system, as the petition is not numbered consecutively.

[4]  The following summary is drawn from the February 8, 2005 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), designated in this action as respondent's lodged document 6, at pgs 1-21.  See also People v. Johnson, CO42532, 2005 WL 289962 at *1-2 (Feb. 8, 2005).  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not attempted to rebut that presumption and this court will therefore rely on the state court's recitation of the facts.

locks and telephone number.  She told [petitioner] if he contacted her she would call the police.

[Petitioner] was released from prison on March 1, 2001.  On the evening of March 12, 2001, Robyn and her new friend Patrick Watson fell asleep on a mattress in her living room while watching television.  Some time after midnight, Robyn awoke and saw [petitioner] standing in the living room, holding a night stick.  Watson recognized the night stick as a "PR-24" because he had used one during his former employment as a correctional officer.  [Petitioner] began to hit Watson in the head and face with the night stick.  When Robyn screamed, [petitioner] told her to "shut up, bitch," and began to hit her in the face.  Robyn ran toward the door, but [petitioner] grabbed her and began hitting her in the head again.  Thinking Robyn had escaped, Watson fled out the bedroom sliding door.  Robyn passed out.  When she awoke, she found she was alone in the house.  Robyn spent six days in the hospital and had ongoing trauma.

When arrested on March 20, [petitioner] had a one-way ticket to Texas purchased on March 13 in his pocket.  While being transported to the police station, he said to the deputy sheriff, among other things, "I'm going to be going away for a long time.  I almost got away.  I really fucked up.  I ran because I was scared[ ]" and "What do you think is going to happen to me now?"

Watson saw [petitioner's] face and identified him as the assailant at trial.  Robyn did not initially identify [petitioner] as the assailant.  Neither she nor Watson recalled the original descriptions given to the police.

### [Petitioner's] Case

[Petitioner] testified he was incarcerated in the Metropolitan Detention Center in February when he received the letter from Robyn.  He had expected the letter, and was not upset.  On March 8, one week after his parole, he informed his parole officer that he wanted to move to Texas to help his mother, who had cancer.

On March 12 and 13, the night of the attack, [petitioner] had been staying with friends, Miguel Elicia (Buck) and Gwen DuPatty.[5]  After DuPatty left the house, a friend dropped [petitioner] off at Darcell Snowton's home about 8:00 p.m.  [Petitioner] took a cab back to Elicia and DuPatty's house about 2:30 a.m.  Between 9:00 and 10:00 a.m. on March 13, his sister Denise Galvan picked him up.  On March 19, he received a bus ticket that had been purchased

---

[5] DuPatty indicated during her testimony that her boyfriend's last name was "Sansaya"; defendant refers to him as "Miguel Elicia."

3

1  on March 13 and a money order from his mother.  [Petitioner]
   denied ever threatening Robyn.

2

3  Snowton testified she was with defendant until about 2:00 a.m. on
   the night of the murder.  [Petitioner]'s sister Denise confirmed
   [petitioner] was staying at Elicia's house.  She also claimed

4  [petitioner] was not upset by the impending divorce.

5  In rebuttal, Gwen DuPatty testified that  [petitioner] came in
   between 10:00 and 12:00 p.m., but he may have been gone when

6  she arose at 6:00 or 6:30 a.m. on March 13.

7  (Opinion at 2-5.)

8                                    ANALYSIS

9  I.  Standards of Review Applicable to Habeas Corpus Claims

10         A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

11  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

12  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

13  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

14  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

15  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

16  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

17  (1972).

18         This action is governed by the Antiterrorism and Effective Death Penalty Act of

19  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

20  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

21  habeas corpus relief:

22         An application for a writ of habeas corpus on behalf of a
       person in custody pursuant to the judgment of a State court shall

23     not be granted with respect to any claim that was adjudicated on
       the merits in State court proceedings unless the adjudication of the

24     claim -

25         (1) resulted in a decision that was contrary to, or involved
       an unreasonable application of, clearly established Federal law, as

26     determined by the Supreme Court of the United States; or

                                              4

1               (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
2               State court proceeding.

3 See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

4 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

5 does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

6 of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

7 also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

8 we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

9 error, we must decide the habeas petition by considering de novo the constitutional issues

10 raised.").

11         The court looks to the last reasoned state court decision as the basis for the state

12 court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

13 state court decision adopts or substantially incorporates the reasoning from a previous state court

14 decision, this court may consider both decisions to ascertain the reasoning of the last decision.

15 Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

16 reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

17 habeas court independently reviews the record to determine whether habeas corpus relief is

18 available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle

19 v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not

20 reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

21 AEDPA's deferential standard does not apply and a federal habeas court must review the claim

22 de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

23 /////

24 /////

25 /////

26 /////

1  II.  Petitioner's Claims

2          Claim 1 - Ineffective assistance of counsel

3          Petitioner contends that his trial counsel provided ineffective assistance by failing

4  to seek suppression of a statement and physical evidence and for failing to preserve potentially

5  exculpatory information in the form of a taped phone conversation.  (Pet. at 12, 14.)

6                    *Legal Standard*

7          The Sixth Amendment guarantees the effective assistance of counsel.  The United

8  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

9  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

10 counsel, a petitioner must first show that, considering all the circumstances, counsel's

11 performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a

12 petitioner identifies the acts or omissions that are alleged not to have been the result of

13 reasonable professional judgment, the court must determine whether, in light of all the

14 circumstances, the identified acts or omissions were outside the wide range of professionally

15 competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

16 petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

17 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

18 counsel's unprofessional errors, the result of the proceeding would have been different." Id. at

19 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

20 outcome." Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

21 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

22 deficient before examining the prejudice suffered by the defendant as a result of the alleged

23 deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

24 sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

25 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

26 /////

6

1   　　　　In assessing an ineffective assistance of counsel claim "[t]here is a strong

2   presumption that counsel's performance falls within the 'wide range of professional assistance.'"

3   Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

4   presumption that counsel "exercised acceptable professional judgment in all significant decisions

5   made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

6   　　　　　　　　　　　　　　*Suppression*

7   　　　　Approximately a week after the attack that eventually resulted in petitioner's

8   conviction, police units went to the apartment complex of Carol Olivas looking for petitioner.[6]

9   (Reporter's Transcript (RT) at 380.)  The police obtained a key and approached Olivas'

10  apartment.  (Id. at 382.)  The police knocked to announce their presence but no one answered.[7]

11  (Id. at 382.)  They then entered the apartment without a warrant.  (Id. at 383; Pet. at 12.)  Olivas

12  and her son were removed by police officers and she stated that petitioner was in the apartment.

13  (RT at 401.)  At trial, petitioner testified that on the day in question he was in bed with Olivas

14  when he heard a loud noise.  (Id. at 490.)  Petitioner, fearing it was the father of Olivas' children,

15  hastily put on his pants and went out the window, jumped over a gate and ran before being seized

16  by a police dog.  (Id. at 490-91.)

17  　　　　Police recovered a one-way bus ticket to Texas in petitioner's pocket and a letter

18  from petitioner's mother acknowledging her purchase of the ticket.  (RT at 372-75.)  The ticket

19  was purchased on March 13, 2001, the same day as the attack.  (Id.)  While in the back of a

20  police car headed to the station, petitioner volunteered to police officers, "I'm going to be going

21  away for a long time.  I almost got away.  I really fucked up.  I ran because I was scared.  What

22  do you think is going to happen to me now?"  (Id. at 418.)  Petitioner contends that his trial

23  counsel was ineffective for failing to move to suppress the train ticket and his statements to

24  　　　　　　[6] Petitioner was romantically involved with Olivas.

25  　　　　　　[7] Petitioner and Olivas both testified at trial that the police did not announce their

26  presence prior to entering the apartment.  (RT at 490, 560-61.)

1  police.  The California Court of Appeal for the Third Appellate District, rejected petitioner's

2  argument in this regard on direct appeal, stating:

3      [Petitioner] argues trial counsel erred by failing to seek suppression
       of the items in his pockets and his postarrest statements because
4      the warrantless entry into the apartment was not excused by
       consent or exigent circumstances, and his arrest was the fruit of
5      this poisonous tree.  [Petitioner] contends he had standing as an
       "overnight guest" to challenge the entry.

6

7      Failure to preserve a Fourth Amendment claim for appeal will not
       necessarily preclude appellate review of the merits of the argument
8      if [petitioner] asserts on appeal that his trial counsel was
       constitutionally ineffective for failing to preserve the argument for
9      appeal.  (People v. Terrell (1999) 69 Cal.App.4th 1246, 1252-1254,
       82 Cal.Rptr.2d 231.)  There can be no prejudice from a failure to
10     make a futile suppression motion.  (Kimmelman v. Morrison
       (1986) 477 U.S. 365, 382 [91 L.Ed.2d 305] [defendant must show
11     motion to suppress would have been meritorious in order to satisfy
       the prejudice prong of ineffective assistance of counsel standard].)

12     We are not persuaded by [petitioner's] basic premise.  He does not
       claim the officers lacked probable cause to arrest him.  Rather, he
13     contends the arrest was the product of an illegal entry, even though
       he was arrested outside the house.

14
       [Petitioner's] arrest was not the product of the entry.  [Petitioner]
15     testified he went out the apartment's bedroom window after hearing
       a noise because he thought a vengeful man would find him.  He ran
16     from his lover's ex-husband, not from the police.

17     Therefore, even assuming the entry into Carol Olivas's apartment
       could have violated someone's Fourth Amendment rights (although
18     probably not [petitioner's]), his detention and arrest while running
       through an apartment complex were separate from the entry.  The
19     items seized from him and his volunteered statements in the police
       car were not the product of an illegal entry.

20
       Moreover, "'"'[t]o the extent the record on appeal fails to disclose
21     why counsel acted or failed to act in the manner challenged, we
       will affirm the judgment 'unless counsel was asked for an
22     explanation and failed to provide one, or unless there simply could
       be no satisfactory explanation....'"'"  (People v. Hart (1999) 20
23     Cal.4th 546, 623-624, 85 Cal.Rptr.2d 132, 976 P.2d 683, quoting
       People v. Pope (1979) 23 Cal.3d 412, 426, 152 Cal.Rptr. 732, 590
24     P.2d 859, fn. omitted.)  In this case, trial counsel answered the
       question at the Marsden motion.  Trial counsel explained that, after
25     researching the issue, he concluded a motion to suppress would be
       futile because defendant was arrested outside the apartment.  The
26     statement was given 45 minutes after the officers had entered the

8

1        house.  We agree.  "It is not incumbent upon trial counsel to
advance meritless arguments or to undertake useless procedural
2        challenges merely to create a record impregnable to assault for
claimed inadequacy of counsel."  (People v. Constancio (1974) 42
3        Cal.App.3d 533, 546, 116 Cal.Rptr. 910.)

4 (Opinion at 7-8.)

5        An attorney's failure to make a meritless objection or motion does not constitute

6 ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing

7 Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rupe v. Wood, 93 F.3d 1434,

8 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

9 "To show prejudice under Strickland resulting from the failure to file a motion, a defendant must

10 show that (1) had his counsel filed the motion, it is reasonable that the trial court would have

11 granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would

12 have been an outcome more favorable to him."  Wilson v. Henry, 185 F.3d 986, 990 (9th Cir.

13 1999) (citing Kimmelman, 477 U.S. at 373-74) (so stating with respect to failure to file a motion

14 to suppress on Fourth Amendment grounds).  See also Van Tran v. Lindsey, 212 F.3d 1143,

15 1156-57 (9th Cir. 2000) (no prejudice suffered as a result of counsel's failure to pursue a motion

16 to suppress a lineup identification), overruled on other grounds by Lockyer v. Andrade, 538 U.S.

17 63 (2003).

18        Petitioner has failed to demonstrate that if a motion seeking suppression of the bus

19 ticket and his statements had been brought, it would have been meritorious and would have

20 resulted in a more favorable verdict.  Petitioner does not dispute that he was outside the

21 apartment when arrested nor does petitioner dispute that he fled Olivas' apartment believing the

22 intruder was a jealous ex-husband.  Given that undisputed fact the warrantless entry of police

23 into Olivas' apartment could not have resulted in the suppression of the evidence seized from

24 petitioner.  On this point, the undersigned notes that the trial court denied petitioner's Marsden

25 motion, where petitioner's primary concern was his counsel's failure to file a motion to suppress

26 /////

1  evidence.  (Reporter's Transcript (RT) of Sealed Proceedings at 818-37.)  In denying the

2  Marsden motion, the trial court stated:

3              On the Fourth Amendment action, it's impossible for me to
               evaluate in detail the propriety of a motion under the Fourth
4              Amendment based on the facts as I understand them as adduced in
               the more limited way in the context of the trial;

5
               I don't see a basis for, but here I'm really not looking as much at
6              the merit of such a claim as to whether or not the attorney properly
               investigated.  In this instance, he did, sought assistance from the
7              professional research unit in the Public Defender's Office and they
               did not find a basis for it.

8
               In my mind I have some other defects running through my mind as
9              [petitioner] articulated his concern in that regard, but defects in a
               motion that would be brought as he outlined it, but bottom line is
10             that [trial counsel] handled it properly.

11  (RT of Sealed Proceedings at 836.)

12             Likewise, the California Court of Appeal found no error in the conduct of

13  petitioner's trial counsel in this regard.  (Opinion at 6-8.)  Under California law, any motion to

14  suppress petitioner's statement to police or the bus ticket seized from him would have been

15  denied.  California courts have examined the principles set forth in Payton v. New York, 445

16  U.S. 573 (1980) and New York v. Harris, 495 U.S. 14 (1990), and held,

17             Where there is probable cause to arrest, the fact that police illegally
               enter a home to make a warrantless arrest neither invalidates the
18             arrest itself, nor requires suppression of any post-arrest statement
               the defendant makes at the police station.

19

20  People v. Watkins, 26 Cal. App. 4th 20, 29 (1994) (citing People v. Marquez, 1 Cal. 4th 553,

21  568-69 (1992) (finding that lack of an arrest warrant did not invalidate defendant's arrest or

22  suppression of statements at the police station, but required only suppression of evidence seized

23  from the home at the time of arrest)).  Here, the police had probable cause to make an arrest since

24  the victim had identified petitioner as her assailant.  (RT at 368-69.)

25             Petitioner has failed to show that a motion to suppress would have been

26  successful.  Indeed, it appears clear that such a motion would have been denied under the facts of

1   this case.  As noted above, the failure to raise a meritless legal argument does not constitute

2   ineffective assistance of counsel.  <u>Kimmelman</u>, 477 U.S. at 373-74; <u>Jones</u>, 231 F.3d at 1239 n.8;

3   <u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994).

4            Moreover, even assuming that a motion to suppress would have been successful,

5   petitioner has not shown that the outcome of his trial would have been more beneficial to him.

6   At trial petitioner presented evidence to the jury explaining the bus ticket and his statements to

7   police.  Petitioner testified that he had been planning on moving to Texas to live near his mother

8   for some time.  (RT at 480-81.)  There was also testimony from petitioner's probation officer that

9   prior to the commission of the crime, petitioner had inquired about the procedure for transferring

10  his probation supervision to Texas.  (RT at 648-49.)  Petitioner testified at trial that he

11  voluntarily made statements to police but that they were taken out of context in that he was

12  actually expressing only his concern that his probation would be violated due to him fleeing from

13  police, not because he had perpetrated the assault.  (RT at 492-93.)[8]

14           While it is unclear how much weight the jury gave to the evidence that petitioner

15  now claims should have been suppressed pursuant to defense motion, it is clear that the critical

16  issue at petitioner's trial was the identification evidence.  In this regard, petitioner was identified

17  by both victims as their attacker and none of petitioner's witnesses could account for his

18  whereabout at the time of the attack.  (RT at 708-09.)  Petitioner has not shown that suppression

19  of the bus ticket or his statements to police upon his arrest would have affected the jury's verdict

20  or that the state court's decision rejecting his arguments in this regard was contrary to clearly

21  established federal law.  Accordingly, petitioner is not entitled to habeas relief on this aspect of

22  his ineffective assistance of counsel claim.

23  /////

24  /////

25

26           [8]  Despite this trial testimony by petitioner, he now argues that he made the statements in
    question while disoriented, in terror and in pain.  (Pet. at 13.)

11

1          *Audio Tape*

2          Petitioner also contends that his trial counsel provided ineffective assistance by

3  failing to preserve potentially exculpatory evidence in the form of a tape-recorded telephone

4  conversation.  (Pet. at 14.)  This claim involves the January 2001 telephone conversation between

5  petitioner, then incarcerated in a federal detention center where phone calls are recorded, and the

6  victim, Robyn.  The tapes were destroyed before either party heard the recording.  Robyn

7  testified at trial that during the conversation, she told petitioner she was divorcing him and

8  petitioner then threatened to stalk and hurt her.  (RT at 119.)  Petitioner denies threatening Robyn

9  and contends that production of the tape-recorded telephone conversation would have confirmed

10  this and proved that Robyn lied.  The California Court of Appeal described the background of

11  this claim as follows:

12                It is undisputed that trial counsel obtained an order in July 2001
              from the trial court authorizing a subpoena duces tecum to the
13                Metropolitan Detention Center in Los Angeles for the tapes of
              [petitioner's] telephone conversations.  Later that month, trial
14                counsel was notified by the Federal Bureau of Prisons that the
              tapes would not be released to anyone but a law enforcement
15                agency.  Thereafter, the deputy district attorney attempted to obtain
              the tapes by sending his own subpoena.  The district attorney
16                ceased his efforts when the federal authorities indicated that an
              investigator could only copy three hours per day of the 120 hours
17                of tapes.

18                Trial counsel again subpoenaed the tapes on December 19, 2001.
              He received a telephone message in January that the tapes were no
19                longer available.  In February 2002, defense counsel was told the
              tapes had been destroyed.  According to trial counsel, the records
20                had been set aside but were destroyed when the federal authorities
              did not hear from the prosecutor.

21

22  (Opinion at 8-9.)

23          In his pending application for habeas relief, petitioner argues that his trial counsel

24  was ineffective for failing to preserve the tapes once the prosecution had declined to copy them.

25  Petitioner notes that the trial judge stated that this "raises at least an inference of [ineffective]

26  assistance of counsel[.]"  (RT at 670.)  In the instant petition and on direct appeal, petitioner

12

1   argued that the tapes were exculpatory as they would have revealed that he did not threaten the

2   victim, thus impeaching her testimony.  Petitioner concludes that this evidence also would have

3   cast doubt on the victim's identification of him as her attacker and would have undermined the

4   evidence of premeditation.  (Pet. at 16.)  The state appellate court rejected petitioner's argument,

5   stating:

> Assuming for the sake of argument that trial counsel did not act in
> a timely manner to obtain the tapes, and that he had the power to
> obtain the tapes, the record is insufficient to show the failure to do
> so was prejudicial, thereby establishing ineffective assistance of
> counsel.  The record lacks any evidence that the tapes were
> exculpatory.  Indeed, the affidavit for the subpoena duces tecum
> expressly states the taped telephone call was inculpatory.
> [Petitioner's] argument that "[Robyn's] credibility may well have
> been destroyed by the tapes and [petitioner] may well have been
> acquitted" is not persuasive.  Whether or not [petitioner] threatened
> Robyn in a January telephone call before his release in March, his
> own testimony confirms he knew she was divorcing him.  The case
> hinged upon the certainty of the identification of [petitioner] as the
> assailant of both Robyn and Watson.  The absence of a direct threat
> to kill was not sufficient to undermine the verdict, particularly
> when the jury could see the victim's warning to defendant that if he
> contacted her she would call the police.  Therefore, the failure to
> produce the tape was not ineffective assistance of counsel.

16  (Opinion at 10-11.)

17          Petitioner has again failed to meet his burden under <u>Strickland</u> with respect to this

18  aspect of his ineffective assistance of counsel claim.  Even assuming arguendo that trial counsel

19  was ineffective in failing to obtain the tape-recordings, petitioner has not demonstrated any

20  prejudice resulting from this error.  If the tapes revealed what petitioner contends, the evidence

21  would not have been exculpatory in any event.  Petitioner has not shown that "there is a

22  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

23  would have been different."  <u>Strickland</u>, 466 U.S. at 694.  The existence or non-existence of a

24  threat by petitioner toward his victim in January of 2001 is collateral to the pertinent facts of the

25  case.  Petitioner was identified by both victims as being the perpetrator of the crime.

26  /////

1    Petitioner argues that Robyn's credibility would have been undermined had his

2 attorney acted to preserve the tape-recorded conversation.  However, the nature of the victim's

3 relationship with petitioner and her credibility in describing it, was thoroughly explored by

4 petitioner's trial counsel who questioned Robyn about the various letter she sent while petitioner

5 was incarcerated.  On direct examination at trial, Robyn recounted the physical and emotional

6 abuse she suffered at the hands of petitioner.  (RT at 117.)  On cross examination, petitioner's

7 trial counsel questioned Robyn at length about the letters she wrote to petitioner in January 2001,

8 expressing her love and affection for him.  (RT at 171-73.)  Despite that cross-examination, the

9 jury apparently credited Robyn's testimony.

10    Furthermore, the evidence presented at petitioner's trial supports the inference that

11 the tape-recorded conversation in question would have inculpated petitioner, as Robyn claimed.

12 In this regard, the exact date of the phone call was not known but it was alleged to have occurred

13 in late January 2001.  (RT at 170-71.)  In letters sent between January 4 - 28, 2001, Robyn stated

14 how much she loved and respected petitioner and how she would always stand by him and was

15 excited about his upcoming release from detention.  (Clerk's Augmented Transcript (CT) at 2-3,

16 8, 10-14, 16-19, 21.)  However, in Robyn's final letter written on February 5, 2001, the tone is

17 markedly different as she told petitioner that she was filing for divorce, changing the phone

18 number and locks and would call the police if petitioner came to her house.  (Id. at 24-26.)  Even

19 without the transcript of the telephone call in question, it is evident that something occurred in

20 late January of 2001 that changed the nature of the relationship between the two.  There was also

21 testimony admitted at trial that during this time Robyn attempted to obtain a restraining order

22 against petitioner.  (RT at 188-90.)  Despite the inconsistences in her testimony regarding her

23 feelings for petitioner, the jury apparently credited Robyn's testimony.  The reviewing court must

24 respect the jury's ability to determine the credibility of witnesses.  Walters v. Maass, 45 F.3d

25 1355, 1358 (9th Cir. 1995).

26 /////

1    Petitioner's argument that the alleged threat that took place during the telephone

2    conversation was the sole evidence of his premeditation is meritless.  The jury at petitioner's trial

3    was properly instructed that,

4        Premeditated means considered beforehand.  If you find that the
         attempted murder was preceded and accompanied by a clear
5        deliberate intent to kill which was the result of deliberation and
         premeditation so that it must have been formed upon preexisting
6        reflection and not under a sudden heat of passion or other condition
         precluding the idea of deliberation, it is attempt to commit willful,
7        deliberate and premeditated murder.

8    (RT at 771.)

9    In this case, petitioner armed himself with a police baton and went to the victim's

10   house, which petitioner no longer lived at, sometime around 3:00 a.m.[9]  Petitioner entered the

11   home and approached the victims while they were sleeping.  Even if the tape recorded

12   conversation had been produced and did not reflect any threat by petitioner, there was sufficient

13   evidence admitted at petitioner's trial to support the jury's finding of premeditation.[10]

14   For these reasons, petitioner has not demonstrated that his trial counsel was

15   ineffective in failing to obtain the tape-recording of his January 2001 conversation with Robyn.

16   Nor has petitioner established that the state appellate court's decision rejecting his argument in

17   this regard is contrary to clearly established federal law.

18                    Claim 2 - Jury instructions

19   Petitioner next argues that the trial court erred by not instructing the jury with

20   respect to heat of passion or manslaughter.  (Pet. at 17.)  Respondent counters that this claim is

21   procedurally barred.  (Answer at 16-17.)

22   /////

23   _____

24   [9]  Police responded to the scene at 3:45 am, following a neighbors 911 call.  (RT at 230,
     322.)

25

26   [10]  Petitioner's argument in his fifth claim for relief that there was insufficient evidence
     introduced at trial to support a finding of premeditation is equally meritless for the same reason.

1      *Legal Standard*

2            A challenge to jury instructions does not generally state a federal constitutional

3    claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle, 456 U.S. 107,

4    119 (1982)).  Habeas corpus is unavailable for alleged error in the interpretation or application of

5    state law.  Middleton, 768 F.2d at 1085; Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir.

6    1986).  However, a "claim of error based upon a right not specifically guaranteed by the

7    Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

8    infects the entire trial that the resulting conviction violates the defendant's right to due process."

9    Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

10    Cir. 1980)).  See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such

11    a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that

12    the resulting conviction violates due process.").  The analysis for determining whether a trial is

13    "so infected with unfairness" as to rise to the level of a due process violation is similar to the

14    analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an

15    error had "a substantial and injurious effect" on the outcome.  See McKinney v. Rees, 993 F.2d

16    1378, 1385 (9th Cir. 1993).

17            Under the doctrine of procedural default, a petitioner who has defaulted on his

18    claims in state court is barred from raising them in federal court so long as the default is

19    "pursuant to an independent and adequate state procedural rule."  Coleman v. Thompson, 501

20    U.S. 722, 750 (1991).  In Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit

21    adopted a burden-shifting analysis in determining the adequacy of a state procedural rule.  Under

22    this analysis, the state may plead as an affirmative defense, that the petitioner's failure to satisfy a

23    state procedural bar should foreclose federal review.  322 F.3d at 586.  Once the state pleads the

24    bar, the burden shifts to the petitioner to challenge the adequacy of that bar by showing that it has

25    been inconsistently applied.  Id.  However, the state has the ultimate burden of proving the

26    adequacy of the state procedural rule relied upon as an affirmative defense.  Id.

1    It is established under California law that a defendant is estopped from raising any

2  error as a ground for reversal if he or she initially invited the error at trial.  People v. Marshall, 50

3  Cal.3d 907, 931 (1990).  In Leavitt v. Arave, 383 F.3d 809, 832-33 (9th Cir. 2004), the Ninth

4  Circuit held that only where the state court expressly invoked the invited error doctrine as the

5  basis for rejection of the claim may it be applied as a state procedural bar to federal habeas relief.

6                                      *Discussion*

7    Petitioner argues that the trial court should have included an instruction to the jury

8  on heat of passion or manslaughter.  (Pet. at 17.)  Respondent counters that this claim is

9  procedurally barred from federal review, since the court of appeal rejected petitioner's argument

10  in this regard based on the independent and adequate state law ground of invited error.  (Answer

11  at 16-17.)  In his traverse, petitioner does not address respondent's argument that this claim is

12  procedurally barred.  The California Court of Appeal discussed the pertinent background with

13  respect to this claim as follows:

14          During discussions on jury instructions, and referring to an earlier
           discussion, the trial court stated:
15
           "There are lesser included crimes here as to the attempted murder.
16         There would be the lesser included crime of attempted voluntary
           manslaughter.  It's my understanding, [trial counsel], that you are
17         not requesting that, fair statement?"

18         [Trial counsel:] "Correct, your Honor."

19         [The court:] "That's a strategic concern based on your theory of the
           case that [petitioner] wasn't there at all, fair statement?"
20
           [Trial counsel:] "Fair."
21
           [The court:] "And the Court would note further even if that was not
22         the situation, it is simply not sufficient evidence in this record to
           support a heat of passion, for example, voluntary manslaughter of [
23         sic ] attempt in the context of the case as a whole most notably as it
           has been presented by the defendant. [¶] ... [¶]  It's a whodunit case,
24         not a what type of crime case, fair statement [trial counsel]?"

25         [Trial counsel:] "Yes."

26  /////

17

1      [The court:] "Does that reflect your strategic concern?"

2      [Trial Counsel:] "Yes."

3   (Opinion at 11-12.)

4          However, just prior to the jury returning its verdict[11], another public defender who

5   was standing in for petitioner's trial counsel, stated to the court that after a discussion with trial

6   counsel they had agreed that it was a fundamental mistake not to request that the jury be

7   instructed on heat of passion or manslaughter.  (RT at 795-96.)  Petitioner then requested that the

8   court not take the jury's verdict and instead re-instruct the jury on the issue of voluntary

9   attempted manslaughter.  (Id.)  The trial court declined to give the belatedly requested jury

10  instruction, ruling that it was not a potential issue of ineffective assistance of counsel as framed

11  by petitioner, rather it involved a sua sponte determination by the court not to give the jury

12  instruction.  (RT at 815.)  In this regard, the trial court stated that there was simply not enough

13  evidence to warrant the giving of this instruction.  (Id.)

14         Faced with this somewhat confusing record, the California Court of Appeal held

15  that:

16         We need not decide whether the trial court's finding that there was
           insufficient evidence to justify instructions on attempted voluntary
17         manslaughter and heat of passion was error.  (CALJIC Nos. 8 .40,
           8.42 & 8.43.)  We conclude that if there was error, it was invited
18         by trial counsel.

19         The doctrine of invited error exists to ensure there is no reversal on
           appeal for an error made by the trial court at the behest of
20         defendant.  In order for the doctrine to apply, defendant must
           object to the instructions and must do so for a strategic purpose
21         rather than by ignorance or mistake.  (People v. Wickersham
           (1982) 32 Cal.3d 307, 330, 185 Cal.Rptr. 436, 650 P.2d 311
22         (Wickersham), fn. omitted .)  "Invited error, however, will only be
           found if counsel expresses a deliberate tactical purpose in resisting
23         or acceding to the complained-of instruction. [Citations.]"  (People
           v. Valdez (2004) 32 Cal.4th 73, 115, 8 Cal.Rptr.3d 271, 82 P.3d
24         296.)

25  ─────────────────

26  [11]  Based on questions from the jury, it was by then apparent a guilty verdict was
    imminent.  (RT at 799.)

1

2           In this case, the record demonstrates invited error and estops
        [petitioner] from making this argument.  This was a clear tactical

3       decision.  Trial counsel did not gamble for an all-or-nothing verdict
        concerning the attempted murder of Robyn.  The jury was

4       instructed on unpremeditated murder as a lesser included offense
        of premeditated murder, as well as the lesser charge of assault.

5       Trial counsel elected not to provide the jury with a tempting
        compromise of attempted voluntary manslaughter that was

6       inconsistent with the defense theory, [petitioner's] own testimony,
        and defense witness testimony.

7       (Opinion at 13-14.)

8           The state appellate court thereby expressly applied the "invited error doctrine"

9       which petitioner has failed to address.  Petitioner is therefore procedurally barred from raising

10      this claim in the instant application for federal habeas corpus relief.  Coleman, 501 U.S. at 749-

11      50.

12          Even if this claim where not procedurally barred, petitioner would not be entitled

13      to the requested relief.  California law holds that the trial court must instruct on lesser included

14      offenses when the evidence presented at trial raises a question as to whether all the elements of

15      the charged offense were present, but the trial court is not obligated to provide the instruction

16      when there is no evidence that the offense was less than that charged.  People v. Breverman, 19

17      Cal. 4th 142, 154 (1998).  Petitioner's claim that the trial court had a duty to sua sponte instruct

18      the jury on the lesser included offense of attempted voluntary manslaughter, despite counsel's

19      timely strategic choice to forgo such an instruction, is fundamentally flawed.  A review of the

20      trial record demonstrates that there was no evidence presented to the jury to support the issuing

21      of an instruction on heat of passion or voluntary manslaughter.  In this regard, the defense theory

22      at trial was based on the misidentification of petitioner as the perpetrator.  Because this was the

23      theory of the defense, there simply was no evidence presented that would have supported a

24      finding that petitioner acted in the heat of passion or committed only voluntary manslaughter.

25      Therefore, the trial court was under no obligation to give the jury instructions that petitioner now

26      /////

claims should have been given.  See Breverman, 19 Cal. 4th at 154.  Habeas relief should be

denied with respect to this claim.

### Claim 3 - Sequence of Testimony

As noted above, petitioner also contends in the pending petition that the trial court

erred by forcing petitioner to testify before other defense witnesses.  (Pet. at 19.)  Petitioner's

arguments in this regard are unpersuasive.

### _Legal Standard_

The right to present relevant evidence may, in appropriate circumstances, bow to

accommodate other legitimate interests in the criminal trial process.  See United States v.

Scheffer, 523 U.S. 303, 308 (1998) (defendant's right to present evidence in his defense "not

unlimited" but rather is subject to reasonable evidentiary and procedural restrictions); Michigan

v. Lucas, 500 U.S. 145, 149 (1991) (right to present relevant testimony may bow to

accommodate other legitimate interests).

Moreover, even if a trial court's decision regarding, for instance, the order in

which testimony will be presented at trial amounts to constitutional error, a habeas petitioner is

not entitled to habeas relief unless such error had a "substantial and injurious effect" upon the

verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993) (quoting Kotteakos v. United

States, 328 U.S. 750, 776 (1946)).  See also Fry v. Pliler, 551 U.S. 112, 117 (2007) ("[t]he

opinion in Brecht clearly assumed that the Kotteakos standard would apply in virtually all § 2254

cases").

### _Discussion_

The specifics of petitioner's argument on this point are difficult to discern.

Nonetheless, it appears that petitioner is arguing that he may not have testified at trial, if he had

been given the opportunity to first view the testimony of his alibi witnesses, and that the trial

court therefore violated his due process rights by forcing him to testify first.  (Pet. at 19-20.)

After the prosecution rested its case at petitioner's trial, the trial court stated it would conduct a

Fifth Amendment voir dire of petitioner, who would be first witness to testify for the defense,

since the other defense witnesses were not available at that time. (RT at 459.) Petitioner's

counsel objected on the grounds that it would tactically injure the defense by not allowing the

alibi witnesses to appear as the first defense witnesses. (Id.) The trial court overruled the

objections on the grounds that the jury should not be required to wait for a half a day with

nothing to do before the defense commenced the presentation of its case. (RT at 459-60.) The

trial court did allow petitioner additional time to prepare for his testimony. (RT at 459.)

> Petitioner's argument that the trial court erred in requiring the defense case to go

forward in this order was presented on direct appeal and rejected by the state appellate court,

which reasoned as follows:

> Under both Evidence Code section 320[12] and section 1044,[13] the trial court has inherent and statutory discretion to control the proceedings to ensure the efficacious administration of justice.
>
> [Petitioner] objected to the trial court's order, but did not do so on constitutional grounds. Therefore, the issue is forfeited. However, in order to forestall any further ineffective assistance claim, we reach the merits of the issue.
>
> [Petitioner] relies upon the United States Supreme Court's decision in Brooks v. Tennessee (1972) 406 U.S. 605 [32 L.Ed.2d 358], where, because a state statute required a defendant to testify first, the defendant did not testify at all. The Supreme Court in that case invalidated a state statute requiring a defendant to testify before all other defense witnesses or to forfeit the right. (Id. at p. 612.) Brooks is inapposite.
>
> Nothing in this record indicates that [petitioner's] waiver of his Fifth Amendment right not to testify was coerced by the order of witnesses. Trial counsel's objection was a strategic one. (But see People v. Cuccia (2002) 97 Cal.App.4th 785, 791, 118 Cal.Rptr.2d 668 ["Nonetheless, we conclude his waiver was coerced based on

---

[12] Evidence Code section 320 provides: "Except as otherwise provided by law, the court in its discretion shall regulate the order of proof."

[13] Penal Code section 1044 provides: "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

1  the trial court's threat to consider his case rested if he did not
   testify"].)
2
   Further, we see no prejudice under any standard.  [Petitioner]
3  testified before his alibi witnesses, and before the woman who
   explained he jumped out of her window because he was afraid of
4  her husband, not because he was running from the police.
   [Petitioner's] suggestion that he might have foregone testifying for
5  fear he would appear "unlikable" or "unbelievable" had his alibi
   witnesses testified first is purely speculative, and does not support
6  a due process argument.

7  (Opinion at 19-21.)

8            Petitioner has failed to demonstrate that the state court opinion was contrary to

9  clearly established federal law.  Petitioner's reliance on the decision in <u>Brooks v. Tennessee</u>, 406

10 U.S. 605 (1972), is misplaced.  In <u>Brooks</u>, the Supreme Court found unconstitutional a state

11 statute requiring a criminal defendant who wished to testify to do so before any other defense

12 testimony was heard.  The Supreme Court noted that a defendant may not know at the conclusion

13 of the prosecution's case whether his testimony would be necessary or helpful to the defense.

14 406 U.S. at 610.  The Court concluded that the state statute before it cast too heavy of a burden

15 on the defendant's unconditional right not to take the stand in his own defense by preventing him

16 from realistically assessing the value of his own testimony in light of the other evidence.  <u>Id.</u> at

17 610-11.  Here, the trial court's ruling that the defense should proceed in a timely fashion with the

18 witness that was available at the time put no such burden on petitioner's right not to testify.  In

19 the instant case, it was clear before the trial court's ruling that petitioner planned on testifying in

20 his own defense.  (RT at 472.)  In fact, defense counsel advised the court that petitioner would be

21 testifying, four days prior to the day on which he actually testified.[14]  <u>See</u> <u>United States v. Leon</u>,

22 679 F.2d 534, 538 (5th Cir. 1982) ("<u>Brooks</u> does not control here.  The judge was merely trying

23 to keep the trial from stalling in mid-afternoon.  The record shows that counsel and Hicks already

24

_____

25      [14]  Petitioner testified on Monday, September 5, 2002, and counsel had indicated to the
   court on the previous Thursday that petitioner would be testifying in his own defense.  (RT at
26 459, 471.)

1   had discussed the matter, and Hicks had decided to testify.  Thus the Court's actions did not

2   influence the decision to testify."); Harris v. Barkley, No. CV97-1557 RR., 1999 WL 1273323,

3   *5 (E.D.N.Y. Jan. 25 1999) ("[N]either New York State nor the trial judge presiding over

4   Harris's trial had any absolute rule in place, akin to the Tennessee law, requiring petitioner to

5   testify first in his defense or lose the opportunity to be heard.  Instead, the order of petitioner's

6   testimony within the defense case became an issue only when Harris failed to have all his

7   witnesses available to testify on March 2, 1992, as previously instructed by the court.").

8           Here, petitioner has made no showing that his defense was prejudiced by the fact

9   that he testified before the other defense witnesses were called.  Petitioner merely makes general

10  allegations that the order of the defense testimony affected the jury's verdict, but nothing that is

11  supported by the trial record.  Other than these conclusory statements, petitioner offers no

12  substantive argument in support of this claim.  Petitioner does not describe how his testimony

13  would have changed had he been called after the other defense witnesses nor does he credibly

14  explain the circumstances under which he would have chosen not to testify despite the earlier

15  representations to the trial court that he intended to do so.  Even assuming arguendo that the trial

16  court erred, any such error was harmless under these circumstances.  There is no evidence before

17  this court that the sequence of the defense testimony had a "substantial and injurious effect" upon

18  the verdict in petitioner's case.  See Brecht, 507 U.S. at 637-38.[15]  Petitioner is therefore not

19  entitled to habeas relief on this claim.

20  /////

21

22      [15]  In the case of People v. Cuccia, 97 Cal. App. 4th 785 (2002), cited in the state
    appellate court's decision rejecting petitioner's argument on this issue, the trial court had forced
23  the defendant to testify out of order when another defense witness could not be located and had
    improperly inquired in front of the jury whether the defendant had changed his mind about
24  testifying.  The appellate court did not find this to be per se reversible error and concluded that
    the defendant had failed to establish any prejudice resulting from the trial court's actions.
25  Cuccia, 97 Cal. App. 4th at 792.  Nonetheless, the court did reverse and remand the case because
    the cumulative effect of multiple errors during trial had resulted in a denial of the defendant's
26  right to a fair trial.  Id. at 795.  In this respect, the instant case is clearly distinguishable from that
    confronted by the court in Cuccia.

1        <u>Claim 4 - Sufficiency of evidence</u>

2        Petitioner alleges there was insufficient evidence to support a guilty verdict on the

3    charge of attempted premeditated murder.  (Pet. at 21.)

4        *<u>Legal Standard</u>*

5        The Due Process Clause of the Fourteenth Amendment "protects the accused

6    against conviction except upon proof beyond a reasonable doubt of every fact necessary to

7    constitute the crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  There

8    is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

9    favorable to the prosecution, any rational trier of fact could have found the essential elements of

10   the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  "[T]he

11   dispositive question under Jackson is 'whether the record evidence could reasonably support a

12   finding of guilt beyond a reasonable doubt.'"  <u>Chein v. Shumsky</u>, 373 F.3d 978, 982-83 (9th Cir.

13   2004) (quoting <u>Jackson</u>, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces

14   a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

15   on federal due process grounds."  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  In

16   order to grant the writ, the federal habeas court must find that the decision of the state court

17   reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.

18   <u>Juan H.</u>, 408 F.3d at 1275, n.13.

19       The court must review the entire record when the sufficiency of the evidence is

20   challenged in habeas proceedings.  <u>Adamson v. Ricketts</u>, 758 F.2d 441, 448 n. 11 (9th Cir. 1985),

21   <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 789 F.2d 722 (9th Cir. 1986) (en banc), <u>rev'd</u>, 483 U.S. 1 (1987).  It is

22   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

23   reasonable inferences from basic facts to ultimate facts."  <u>Jackson</u>, 443 U.S. at 319.  If the trier of

24   fact could draw conflicting inferences from the evidence, the court in its review will assign the

25   inference that favors conviction.  <u>McMillan v. Gomez</u>, 19 F.3d 465, 469 (9th Cir. 1994).  The

26   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

1  the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

2  Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a

3  reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors

4  reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

5  determines sufficiency of the evidence in reference to the substantive elements of the criminal

6  offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

7                                  *Discussion*

8          Petitioner essentially argues that there was insufficient evidence presented at his

9  trial to find him guilty of premeditated attempted murder because the evidence established that

10  the victim was unconscious on the floor and petitioner had the opportunity to kill her, but did not.

11  (Pet. at 21.)  The California Court of Appeal quickly disposed of this argument on direct appeal,

12  stating:

13          The jury found [petitioner] not only intended to kill Robyn, but
            committed the crime willfully, deliberately, and with
14          premeditation.  [Petitioner's] use of a lethal weapon, striking
            multiple blows to the head of someone he knew, clearly supports a
15          jury finding of intent to kill.  We reject petitioner's argument that
            the fact he did not succeed in killing Robyn does not mean that he
16          did not intend to kill her.

17  (Opinion at 18.)

18          After a review of the record, it is clear that the state appellate court was correct in

19  concluding that there was sufficient evidence presented to the jury for a finding of premeditated

20  attempted murder.  The trial court correctly instructed the jury with California Jury Instructions -

21  Criminal (CALJIC) No. 8.66 on the elements of attempted murder.  (RT at 770.)  Thus,

22  petitioner's jury was instructed as follows:

23          In order to prove attempted murder, each of the following elements
            must be proved.  1.  A direct but ineffectual act was done by one
24          person towards killing another human being, And 2.  The person
            committing the act harbored express malice aforethought, namely a
25          specific intent to kill unlawfully another human being.

26  (RT at 770, CT at 230.)

1          As the California Court of Appeal stated, evidence that petitioner beat the victim,

2   Robyn, over the head multiple times with a police baton until she was unconscious, undoubtedly

3   supported the jury's finding that petitioner acted with the intent to kill.  Petitioner argues that

4   Robyn could not testify to how many times she was struck, simply stating that she was hit more

5   than once. (Pet. at 21.)  Regardless of the fact that the exact number of times the victim was hit

6   is not known, she testified that she was hit multiple times, and that when she ran for the door

7   petitioner grabbed her to prevent her from escaping, continuing to hit her about the head with the

8   baton. (RT at 127-28.)  A police officer testified that upon arriving at the scene he observed a

9   large quantity of blood on the ground, Robyn's face was almost completely covered in blood, her

10  right eye was almost swollen shut and fresh blood was dripping from the right side of her face.

11  (RT at 322.)  The officer also testified that Robyn appeared to be in shock. (RT at 323.)  Robyn

12  was hospitalized for six days and had to make return visits to the hospital due to her fractured

13  nose and hearing loss. (RT at 465-67.)  That petitioner did not succeed in killing the victim is no

14  basis upon which to disturb the jury verdict finding that petitioner acted willfully, deliberately,

15  with premeditation and with the intent to kill.  A review of the evidence demonstrates that

16  rational jurors could find petitioner guilty of the offense of conviction.

17          While petitioner does not specifically address the identification evidence in his

18  sufficiency of the evidence claim, the court will discuss that evidence since it was a central issue

19  at his trial.  When police first arrived to the scene at approximately 3:45 a.m., immediately after

20  the attack, Robyn did not provide the identity of her assailant. (RT at 323.)  The officer testified

21  that Robyn appeared in shock, her ability to communicate was sporadic and some of the words

22  she spoke were incomprehensible. (RT at 324.)  Another officer who first responded, testified

23  that Robyn was unable to provide her own name upon his arrival. (RT at 314-15.)  Robyn herself

24  testified that she did not remember speaking to police officers who arrived at the scene. (RT at

25  131.)

26  /////

1    At approximately 4:47 am, Robyn was taken to the hospital where different police

2 officers questioned her in the emergency room.  (RT at 341-42, 347.)  One officer testified that

3 Robyn was nauseous and vomiting at that time but appeared aware while answering the officer's

4 questions. (Id.)  When asked about her husband, Robyn provided information about the pending

5 divorce and provided petitioner's name, date of birth and the intersection where he was staying

6 with his aunt.  (RT at 344-45.)  However, Robyn did not identify petitioner as being the assailant

7 at that time.  (RT at 345-46.)  At petitioner's trial Robyn testified that she only vaguely

8 remembered this conversation with police and was heavily sedated at the time.  (RT at 184-85,

9 206-07.)

10    The afternoon following the attack, March 13, 2001, detectives went to the

11 hospital to speak with Robyn again.  She was unable to answer questions at that time as she was

12 throwing up, complaining of pain and was generally incoherent.  (RT at 353, 368.)  It was only

13 on the following day, March 14, 2001, that Robyn first identified petitioner as her attacker.  (RT

14 at 369.)  At trial, she testified that she was one hundred percent sure that petitioner was the

15 attacker.  (RT at 131.)

16    The other victim, Patrick Watson also identified petitioner as the attacker in his

17 testimony at trial.  (RT at 224.)  Prior to the attack Watson had never seen petitioner in person,

18 but had seen a photograph of him.[16]  (RT at 224, 249.)  Watson described the attacker as about

19 six feet tall, one hundred and eighty to two hundred pounds.  (RT at 691.)  Petitioner is five feet,

20 nine inches, one hundred and seventy to one hundred and seventy-five pounds.  (Id.)  At the

21 hospital on March 13, 2001, Watson told detectives that the assailant looked a little like Robyn's

22 husband, petitioner.  (RT at 355.)

23    In his closing arguments, petitioner's trial counsel focused on these identification

24 issues and argued to the jury that Robyn's testimony identifying petitioner as her attacker was not

25

26    [16]  There were conflicting accounts presented at trial as to whether this picture was fuzzy
or out of focus.  (RT at 249-50, 355.)

1  credible and pointing out that Watson did not obtain a good look at the attacker.  (RT at 714-20.)

2  Yet, despite this evidence and counsel's cross-examination, the jury at petitioner's trial

3  apparently credited the testimony identifying petitioner as the perpetrator of the attack on Robyn.

4  Based on the evidence presented at trial, a rational juror could find that petitioner was the

5  assailant.  Petitioner has failed to satisfy his heavy burden in attempting to disturb the jury's

6  verdict.

7          With respect to petitioner's claim that there was insufficient evidence for a finding

8  of premeditation, this claim is also meritless for the reasons discussed by the court above in

9  discussing petitioner's claim two regarding the failure to preserve the tape recorded conversation

10  between petitioner and Robyn.  The evidence presented at trial was sufficient for a rational juror

11  to conclude that petitioner acted with premeditation in the assault on Robyn.[17]

12          The state appellate court's rejection of petitioner's insufficiency of the evidence

13  arguments was based on a reasonable construction of the evidence in this case and is not contrary

14  to or an objectively unreasonable application of clearly established federal law.  See Woodford v.

15  Visciotti, 537 U.S. 19, 25 (2002); see also 28 U.S.C. § 2254(d)(1).  Therefore, petitioner is not

16  entitled to habeas relief with respect to his insufficiency of the evidence claims.

17                              CONCLUSION

18          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

19  a writ of habeas corpus be denied.

20          These findings and recommendations are submitted to the United States District

21  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

22  one days after being served with these findings and recommendations, any party may file written

23  objections with the court and serve a copy on all parties.  Such a document should be captioned

24  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25

26  _____
   [17]  The jury did not find petitioner guilty of premeditated attempted murder of the other
   victim, Watson.

shall be served and filed within seven days after service of the objections.  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 15, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD: ab
john1223.hc